and Amicus Curie will be arguing, I gather, the entire 15 minutes for Petitioner? Yes, that's correct, Your Honor. All right. Then you may proceed. Thank you. May it please the Court? I'm sorry. Judge Berzon just reminded me that I need to explain that Judge Ishii could not be available for the argument at the last minute. He was going to attempt to phone in, and I gather he was unable to phone in. So we will prepare a tape of these proceedings for him, and he will listen to the tape. And then we will conference on the case after that. Okay. All right. All right. Thank you. Thank you, Your Honor. May it please the Court? I'm Lucas Gutentag, Amicus Curie, appointed by the Court to address the question that was promulgated by this Court. And I'd like to reserve three minutes for rebuttal, if I may. This case arises in the context of an in absentia final order issued against a young boy. Because of that order, he lost all of his rights in the deportation process and is now subject to a final order of deportation that deprives him of any conceivable relief and imposes a ten-year bar on reentry. The INS denies any obligation to serve any adult in any case once an arrested child turns 14 years old. I'd like to make two basic points. The first is we believe that due process requires serving an adult of a notice of a hearing under the circumstances presented here where the INS's own regulations require the actual presence of an adult and requires that adult to take responsibility for a juvenile before any juvenile under the age of 18 can be released from INS custody. The second point I want to make is that we believe that both the statute and the regulations that govern in this case can be construed to provide the notice that is required by due process. So are you arguing that the notice is required only in the circumstances where someone is being removed from custody by an adult or otherwise as well? The under-14 regulation appears to be general and not to be limited to the situation in which the child is in custody. That's right. The under-14 regulation applies across the board and requires service on an adult, not on the juvenile at all, but in the under-14 circumstances only on the adult and is unrelated to custody. Our argument is specific to this case and these circumstances where a juvenile who is 14 years old or older is taken into INS custody and then pursuant to the INS regulations is released from custody to a responsible adult. So are you making a facial challenge to the custodial situation? No, we're not, Your Honor. We believe, in fact, that the statute and the regulations should be construed to provide for this service so that neither the statute nor the regulation needs to be declared unconstitutional to the extent that any constitutional ruling regarding the statute of regulations needs to meet our challenges and as applied. But we think a proper construction of the statute and the regulations is that notice has to be provided to the adult who takes the child, who takes responsibility of the child from custody. The statute refers to notice. That necessarily means meaningful notice. It doesn't mean just notice to the particular person who's charged. The INS regulations themselves provide, wouldn't suggest that a 2-year-old could simply be served with notice. So notice means meaningful notice under the circumstances. And the regulations construed in light of the board decisions, the BIA decisions, seems to provide that notice needs to be made on the person who's responsible for ensuring the juvenile's appearance. And under these regulations, the notice needs to be, the juvenile can be released only if a responsible adult appears, either the parent, the guardian, or a very narrow category of specific relatives. And all of those, by virtue of the board's interpretations as I read them, have the implicit obligation to ensure that child's appearance at the future proceedings. I think that's the gist of the Amayo-Castro case that we cited and of the statement in the Mejia-Indito case, that a parent always has the ultimate responsibility for the child. So the regulations allow the release to a person who's responsible by virtue of the relationship, it seems to me, or alternatively to a third-party adult designated either by the parent or by the INS. And under those circumstances, the regulations require explicitly that the adult sign and execute an agreement taking responsibility to care for the child and specifically to ensure the child's appearance at future proceedings. So whenever a juvenile, as I read these regulations, I think properly construed, whenever a child under the age of 18 is released from INS custody, they're released to an adult who has the responsibility to ensure that person's appearance at future proceedings. And it seems to me it's a fair construction of the regulations that whoever has a responsibility of ensuring the child's appearance necessarily has to receive notice. And we think that's a practical matter. Does that mean that the notice that what happens is the child's at the door about to be released, the person comes and gets them, and you hand one notice to the child and one notice to the parent, or may the notice be later? I mean, often I gather that either there's a later notice of hearing or the hearing's changed and there are later notices of hearing. So I assume that you're including any notices of hearing, even if they are not handed out at the door. Right. Whatever the notice is that's provided has to be provided to the adult who takes responsibility of the child, whether it's simultaneous as it was in this case, whether the order to show cause and the notice of hearing was provided at the same time to the juvenile, or whether it's the order to show cause and the notice of hearing with a date to be determined later, then whenever that later date is determined, that notice would then have to be served on that adult. And if I so what I understand you to be saying is that there's a constitutional issue here that would be of concern with regard either to children immediately being released from custody or other children even who are never in custody. But the regulatory argument you're making would only apply in the custody situation. Right. And, yes, that's correct. I mean, I think the due process principle that that notice has to be one that's reasonably calculated to actually achieve the purpose and provide the information, the Moline test, and that the service has to be one that a person is actually desirous of giving meaningful notice would provide, that due process principle applies in every case. And the Gault principle seems applies in every case where there's a juvenile, that when there's a notice of a hearing, a juvenile who's put into a proceeding that is going to risk depriving him of liberty, there needs to be notice to an adult, whenever it's feasible. Under these circumstances. On the due process level with the Miranda, the interrogation and arrest cases. And with Flores, with Reno v. Flores or whatever. I think the arrest cases are entirely different. And I think, in fact, this Court's decisions in those cases, in particular the Harris v. Wright case, makes the clear distinction between notice of a proceeding and the notice to a parent in the interrogation context. And what Judge Kaczynski. It does make the distinction, but it's sort of a hard one to deal with. It's hard to figure out why, in many ways, the child seems more vulnerable in the other situation. It may be. But I think what the Court said in that case is that in the interrogation context, there's a question of coercion, there's a question of voluntariness, there's a question of waiver, and that, under the Michael C. case, has to be judged by a totality of the circumstances. In the notice context, failure to provide adequate notice is determinative of the outcome, because if the child doesn't receive adequate notice, as in this case, then he absolutely doesn't appear. That completely negates any process whatsoever, completely terminates his rights, unless it's reopened subsequently, based on this claim. But it's completely dispositive. And that's why I think Judge Kaczynski, in that case, made the distinction that notice of a proceeding is what Galt applies to on all fours, and, therefore, there has to be notice to an adult when it's notice of a proceeding that will deprive a child of liberty. The interrogation context needs to be judged by the totality of the circumstances. I think the regulations here are significant, both for the reasons that I've stated, but also from a very practical reason, that when the ‑‑ because of the regulations, an adult will necessarily be present before the immigration service in every case where a child is taken into custody. So it imposes absolutely no burden on the INS, or no measurable burden on the INS whatsoever, to provide the notice that would, in fact ‑‑ Well, it's the first time. That's why I asked the question before. I mean, it could get complicated, because you would serve, presumably, the first notice to appear, which would have the various warnings and so on. But after that, you'd have to find the adult, presumably. Well, I think after that point, if the adult would have presumably the same obligation to provide the address that generally applies to update the address, because that's part of the requirement that's on the child, is to provide an address and to regularly update that address. To the extent that the adult is served and has the responsibility, the adult presumably would have that responsibility, so that subsequent notices would be by mail in the same way that the notice would be sent to the child. I also think the regulations are significant because they recognize that children under 18 are vulnerable and that they need special care, and that's precisely the principle in the Galt case. So in order to effectuate the purposes of the regulation, to effectuate the constitutional requirement of notice, and recognizing that it imposes no measurable burden on the INS at all to provide the notice that would protect the child's rights, it makes sense and is required as a matter of due process. I don't see how you avoid the constitutional issue by construing the regulations. I recognize that the regulations are inconsistent if they're requiring a responsible – if they're policy-wise inconsistent, that they're – that you can't make them consistent by reading their – without reading something into their – into the language of the regulations, and that something is a component of due process. I don't see how – I don't see how you avoid the constitutional issue. Well, you know, if the court feels that it can't, then we certainly think as a matter of due process it's required to provide the notice as applied to the circumstances presented here. It seems that the board has – But how would you – how would you suggest that the court could read these regs without reading something into their language that would require what you're asking us to require? And I think if the regulation cannot be read to provide the notice, then I think the regulation has to be struck down as applied to the circumstances of a juvenile taken into custody, released to an adult so that that adult can be provided with the notice. It's not even a question of striking them down. I mean, they don't say that you don't give the notice either, but it's a question of reading – of requiring this notice simply as a matter of due process. Right. And that's what I was going to say. I mean, I think the regulation should be construed to require that. Nothing needs to be invalidated because there's nothing that prohibits the notice here at all. It would be reading the requirement of due process into the regulations. I should say with regard to Judge Warden's question, I was given pause by something in addition, which is that the last paragraph of that same regulation does address the special circumstances of children under 14 with regard to a particular notice requirement, and if it were intended to be elsewhere. In other words, if there were – it seems to incorporate the same assumption about children under 14 and over 14 having different notice needs that the other regulation does. Right. That's the notice regarding specifically the request for relief. Disposition, yes. A disposition where a juvenile may be seeking relief that's inconsistent with the parent's interest. And so I believe that's the one. Well, it doesn't even say anything about it being inconsistent with the parent. It does distinguish between children over 14 and under 14. If the juvenile is under 14 years of age or unable to understand the notice, the notice shall be read and explained to the juvenile in a language the juvenile understands. So there seems again to be some assumption that children over 14 don't have that problem. Right. And so, again, I think that nothing prohibits providing the service that's required here, and it seems that what the board has done in the cases that we cited in our brief is looked at the overall purpose of the regulations. That is, to effectuate appearance, that that's the principal purpose, and to provide service in the Mayo-Castro case in particular in that case where the court interpreted the regulation to provide for service on the person who was the custodian, namely the director of a detention facility. So the board has construed the regulations to provide for service to the person who's actually responsible, and that's what I was suggesting. But insofar as that can't be done directly as a matter of pure textual construction, then it's a matter of constitutional compulsion under the due process. One last question, which is there's just something of a debate in the briefs as to whether we look at this through the Malayne prism or through the Matthews v. Eldridge prism. And I'm wondering if you can articulate how we would do this under Malayne when the actual issue isn't whether the person to whom the notice was directed was getting the notice, but rather whether the notice was directed at the right person. Well, I don't know. I think that what the court said in the Dusenberry case is that when it goes to the question of notice, the Malayne, the Matthews doesn't check it. That's when it goes to that question, i.e., is it getting from the person, from the government to the person to whom it was directed. But that's happening. This is about something else. It's about the fact that the person to whom it's directed is himself really not getting due process by only him getting the notice. And I'm just wondering whether you can do that through a Malayne approach. I think so because it goes to the question of what the proper form of notice is that's required and whether it needs to go to someone other than the juvenile. It seems like that would still be a question. That's not all we're talking about here either. We're talking about the content of the notice as well, what this notice is, what it is, what it communicates to the person. Is it able to meaningfully communicate that to the juvenile because of the juvenile impediments? You want to save some time. We've used it all up, so I'll give you a minute to respond. And we will hear from the government. And while you're exchanging places, I just want to thank everybody for altering their schedules and attending this hearing this afternoon. We appreciate it very much. May it please the Court, my name is Carl McIntyre, and I represent the United States government in this action. In this action, Your Honors, neither the petitioner nor amicus has brought forth anything to show that persons of age 14 or higher are universally incapable of comprehending a simple hearing date. And even though ‑‑ Well, first of all, it's not only a simple hearing date, is it? Well, I'm trying to articulate that it is, and I guess you'll get me into the question that I wanted to tackle first by asking that, Your Honor. Go ahead. Okay. My understanding is that the notice that we're talking about also sets out various obligations, including the obligation to keep the service apprised of the individual's address, the obligation to appear when summoned, and so on. It's not simply a notice of a hearing date. Is that not correct? It's not simply a notice of a hearing date, but the hearing date is the initial thing that the alien has to do. And what I would like to point out is, first, that we do believe that a person of age 14 that's been no showing that he couldn't understand the rights in the hearing notice. But second, and I'll get back to the first point later, second, what is important is that the notice goes to a master calendar hearing before an immigration judge. And I believe that it's clearly different from any scenarios that are brought up by the case of Enrique Gall. In other words, the notice at a master calendar hearing, the immigration judge has the obligation to inform the alien of his rights, his right to an attorney, and so forth. All he has to do is to show up to that hearing, that initial hearing, and he has the opportunity to hear all of the rights that are essentially given in that notice. And that is a preliminary, we believe, a preliminary proceeding, similar to the Harris cases that are cited, not an adjudication. Well, it can be an adjudication, Frank. But at the master calendar hearing, he has a right to at least one continuance to get counsel. But he may also result in a final adjudication, no? Couldn't he at that point simply, what are his options at that point? What I'm saying is that he has the opportunity at that point to obtain any other assistance that he needs, and he gets his rights read to him at that time, and he has the opportunity to get counsel or would be able to go and communicate with a relative or obtain counsel or do anything like that. And generally, these are all master calendar hearings, and they are adjudicated at the first stage. One of the odd things here is that the INS regs seem to operate in two different assumptions. I mean, one is that the child is a responsible human being who can make decisions, and many of us who have had 14-, 15-, or 16-year-old children would question that. And second of all, that they're not, and therefore cannot be released from custody, except in the custody of an adult who has responsibility to see that they show up at the hearing. But I also think that you understand that in reading the Reno v. Flores case and the similarities to this case, is that there's a delicate balance that's going on. In Reno v. Flores, the balance was can we give notice to somebody other than a parent or guardian, give it to a sister or somebody who is a relative, or should we keep them confined? And the delicate balance was who should we give notice to, and here the delicate balance is at age 14, we're going to have aliens who actually come in and say, you didn't give me notice. I wanted notice of my hearing. And I am the one that ‑‑ Excuse me. I think the assumption here is that you're giving both of them notice. Not just ‑‑ First, let me deal with the way the regs are set up. And then I'll deal with your question of dual notice, because the way the regs are set up, from zero to 14, the notice is given to the adult or guardian. And over 14, now my question is to you, what is the question of this court and what is Mika's position, but 14 and over, the issue is ‑‑ can be framed as is it a desire to extend that 14 to 18? And my point is that the way the regs are set up seem to be fluid. In other words, a person who is 14 can get the notice, and he can simply, if he has a guardian with him, he can give that to the person he's with. But at age 14, there's a recognition that he himself has come to a sufficient age of maturity and maturation that he himself needs the notice at this point, so he can ‑‑ But what I don't understand is why it is at all informative or useful to the due process discussion to assume that these are mutually exclusive possibilities. I understand that the regs are written so that when they're under 14, the notice goes only to the child, but in gold it's made quite clear that it's going to the child and to the adult, and that makes sense. So why would ‑‑ Okay, but then your question is the notice to both. And the notice to both, we believe, can easily be handled in this circumstance by simply, if the alien is with the custodian, the alien can give that paper, that notice over. The actual giving of notice to the person or a specific person goes to the guardian. And that goes into more depth of that person being the focus of the notice. And the determination is at age 14, the determination was that the focus of the notice should be the actual alien, and that he can, in order to help the guardian ensure that he shows up, simply share that, that document. And also throw it in the garbage, because he's 14 years old and doesn't know, and is not a responsible person. But I think that there has been no showing that a person at age 14, and I think it's shown by the Polevchik v. Mies case, that there needs to be a recognition that people, that children as young as age 12 have the, should have the ability to assert their own rights with regard to their immigration questions. Some children at age 12 may be able to, and others may not be. And others who are foreigners and don't speak English might even be less able to do so. Why, what is the basis for this distinction at age 14? And why isn't it the legal age majority? Why did the service come up with this age 14 as the time upon which a juvenile is supposed to be legally competent? I don't have the answer to that. I have, with regard to the actual reasons, because I haven't, was not able to find an actual statement of reasons. But in the regulation itself, it deals with the notion of mental incompetence. And a minor under age 14. So it appeared to me that what the regulation was doing was trying to strike a time period above which they thought that a person would be able to understand his basic rights. Just like the difference, the line drawing, the drawing between a person mentally incompetent versus not mentally incompetent, the line drawing that I believe was drawn in this case. And I would like to point out that in order to win on a facial due process challenge, petitioners face a heavy burden in seeking to have regulations found invalid as facially unconstitutional, since the challenger must establish that no set of circumstances exists under which the act would be valid. Okay. Why is this a facial challenge? We were talking about that before. I mean, this isn't a question of there's not any regulation that says that notice shall not be given to children between the ages of 14 and 18. Do you have any regulation like that? Is there any regulation that says that notice shall not be given to parents of children between the ages of 14 and 18? Is there a regulation that says it not? No. So why is it a facial challenge? What's being facially challenged? It's my understanding that the question from this Court that was framed was whether or not that it was appropriate that the cutoff date be age 14 for the giving of notice to an adult rather than the adult. It's not a facial challenge to any written regulation. It rather is a determination whether or not children between the ages of 14 and 18 have due process rights such that their parent or guardian should receive notice. But it's not a facial challenge to existing regulation, is it? The facial challenge is that it applies, that it's attempting to apply the situation to hypothetical others, which is a test for a facial challenge. In other words, there's a suggestion that this date, this line-drawing date is an inappropriate date to be drawn, and that is a facial challenge. I don't understand it that way. And more than that, the other thing that I thought was interesting was when I was reading your briefs. But in addition to that, I thought that was the issue that was framed by the Court. So if it's not, you know, I appreciate it. You are characterizing it as a facial, quote, facial challenge, whatever that means. Okay. The issue that was framed was certainly whether or not children between the ages of 14 and 18 in general are entitled to this notice. But it was not a challenge to an existing INS regulation, because there isn't anyone that says that they should not get this notice. But what I understood was that I thought that the issue was whether the line-drawing date of 14 to give notice. And what I believe is that the focus, what the actual focus of the notice should be. In other words, the service tries very hard, and it's exhibited in the fact that they read the notice to the alien. If the alien is a Spanish-speaking alien, they read the entire notice to them in their language. And they also give that notice. It's a determination in the regs that up until a certain point that should be done to the guardian. But at age 14, the maturation process is believed to be enough that it should go to the person at age 14, because at that point there would be issues of whether the aliens of that age should have noticed themselves. And I believe the Polevchik v. Meese case shows that, Your Honor. Could you tell me what burden there would be on the service to provide this notice? Why wouldn't they provide this notice? As I explained in my brief, because of the focus of the notice, because of the influx of how many people come in unaccompanied at the border, and the attempt to be diligent in reading the nine-paragraph long notice, which you can see at the very end. This is a situation where you've got a kid who was arrested and was being detained by the INS, and a responsible adult has to come and pick him up and take him into custody. You can outline who are the people who have the right to do that and the authority to do that. So what is the burden on the INS in that situation to not only read the rights to the alien, which is obviously a good practice to help the juvenile understand what's going on, but then to also hand it to the responsible adult to make sure that the juvenile actually does what he's told, shows up at the hearing, doesn't end up deported and separated from his family. I believe that the thought is that in that scenario, there's no reason why an alien at the age of 14 can't simply hand that notice over. How about the scenario, well, that scenario, and I find it interesting your argument based on this, but in that scenario, the responsible adult and the juvenile might have very adverse interests. One might be having just been arrested on misdemeanor charges, and the adult might not be very happy, and the juvenile may be wanting to hide the fact that he's got this notice now also. Not only has he been arrested, but now he's got to go show up before the INS at some hearing. I mean, that might be something you would very well not want to turn over to the responsible adult. I mean, why wouldn't it be in the INS's interest to make sure that someone who was responsible got this notice? I think it is in the INS's interest, and I think that the reason that the INS proceeded in the manner that they did when they wrote the regulations is because they were trying to assess a delicate balance, and to try to figure out who the focus of the notice would be. And in the scenario that you're suggesting, I believe that the question would be what would be adequate notice to the adult. And with the influx of aliens at the border, there's many things that happen. One of the things that's very important is the timing of the notice. If you understand the facts of this case, the alien comes in, he was kept in custody I believe a very short time, because on the same day that he got there, he got his notice. And so with what happens sometimes, and this goes to the hypothetical others cases, is that sometimes there needs to be somebody else that is brought in to assist this person out of custody, because there might not be a responsible adult available. So one of the questions is timing. You give that notice to the person as soon as they get there, and not only the timing, but also what you actually do. And we believe that the thought is that you need to actually read the notice to the person in Spanish, if that is his language. And we do believe that in all cases, if we require to do that to both the person and to the other person, it would be a burden. And I believe that's one reason why the regs are written. So from zero to 14, there's one focus of notice given, because it's important to give it to the guardian. And at age 14, the focus of the notice goes to the person who has reached a certain maturation process. All right. Thank you, counsel. Thank you, Honor. Just very briefly, first, it's not just a simple hearing date that the notice provides. One of the critical aspects that a child needs to understand is the consequences of failing to appear, even if a child understands that perhaps they're supposed to go somewhere. What they will not understand is the consequences of not going there and the inabsential order being entered. The second point I wanted to make just quickly in light of the regulations is that by releasing a child, a juvenile, to a responsible adult, I think that also creates the expectation in the child that the adult will be responsible. So not dissimilar to this Court's de Brota decision, the process creates an expectation, in this case, released to an adult. Third, the Reno case is not a notice case. It had to do with the release criteria. And then I also wanted to just note that in terms of drawing the line at a particular age, at a minimum GALT creates an overwhelming constitutional presumption that the line has to be 18. There's nothing to support the suggestion that the counsel has just mentioned, that 14 was some carefully constructed line based on burden. There's no interest in the INS in failing to provide service to the person who will actually ensure appearance. And into the Williams, this Court's Williams case, the Court should not defer to an agency interpretation that raises serious constitutional problems. Do you have anything else? No, I don't. All right. Counsel, again, thank you very much to everybody for altering your schedules. We very much appreciate it. And this case, we will defer submission until Judge Ishii is able to review the transcript of the proceedings and we can confer on it, and then we will order a case submitted. So that's how it was submitted. All right. Thank you very much. Thank you.
judges: Wardlaw, Berzon, Ishii